asked the court to consider reversing and remanding for a new trial or rendering judgment of acquittal for Ms. Ceballos because her conviction rested primarily on statements that were orally admitted and or through a written affidavit of an alien who was available for the government to be to call be called as a witness. The statements were entered without a showing of the opportunity for counsel to cross-examine in violation of Crawford v. Washington. In essence, the government relied solely on this defective evidence to show that an alien had entered the United States, that the criminal offenses were done for financial gain, and that Ms. Ceballos was a member of an alien smuggling conspiracy. Now in this case, which is an alien smuggling case, the evidence was found in the United States and gave a statement to law enforcement agents. At trial, there was a video deposition taken by the government, but for some reason the government chose not to introduce that video deposition. They withdrew their motion to have the video deposition entered. Instead, what the government did, not objected to by counsel, and of course that presents a whole plethora of problems that the court needs to deal with, but instead what the government did was they introduced a sworn affidavit of the alien, which Ms. Ceballos was unable to cross-examine that statement, and they also engaged in something that I'd never seen before, where the prosecutor and the agent engaged in a question-and-answer scenario where the prosecutor was acting as the alien and the agent was acting as himself the agent and conducting a question-and-answer scenario as if it was the agent talking to the agent, to the agent talking to the alien. That also was unobjected to. So I think clearly we have a Crawford violation, we have a confrontation violation, that of course was unobjected to. So therefore the error must be reviewed for clear error. I know this court in the United States v. Stevens has held that that type of violation, if waived by counsel, does not really constitute a violation, but I would submit to the court that since Crawford was handed down, Crawford has removed the confrontation issue from an evidentiary hearsay issue to one of constitutional dimension, and therefore it must be effectively waived by the individual, not by the lawyer. Now I know the government has argued, well, Ms. Ceballos' lawyer waived or can waive that objection by what is referred to as tactical decision or sound trial strategy. I would be remiss if I didn't call this stupid trial strategy as opposed to sound trial strategy, because as I stated earlier, the entire government's case was proven by the affidavit of the alien and the hearsay oral statements conducted by the defense. I think, and I may sound nuts in saying this, but I think perhaps the court, I would invite the court to revisit United States v. Stevens in light of Crawford, because Crawford now has a heightened constitutional protection for individuals who are accused of crime who are now convicted when they don't have the opportunity to confront and cross-examine every witness who appears in front of them. Would you have . . . would trial counsel have had the opportunity to admit part of the deposition? I mean, there was an opportunity to cross there, correct? On the deposition? Yes. I don't know. I think there was a change in counsel, and I don't know who was present at the deposition of the alien. It certainly . . . I don't think it was this lawyer. But the defendant's counsel was present during the deposition? I believe that is true. And had the opportunity to cross? I believe that's true. So wouldn't it have been possible for defense counsel to offer portions of the deposition to counter whatever they wanted to of the proffer of the statement? Well, if the counsel wanted to do that, they certainly could. There was cross-examination of the witnesses, is what I'm getting at, maybe not that particular statement, but it would seem like . . . But, Joan, I have not seen that deposition, so I don't know what cross-examination took place. But I do know that if counsel . . . if her trial counsel had wanted to introduce that deposition, which I would assume included cross-examination, he or she could have done so. But it wasn't done so here, and I don't know how difficult it was when the video deposition was taken. But again, it's not counsel's burden to convict his own client by introducing this deposition. The other issue that I have certainly was unavailability. The alien certainly was available to the government, so I don't think the issue that this witness was unavailable. They knew where he was at. They could have . . . Was he within subpoena power? Pardon me? Was he within subpoena range? Yes, he was, Your Honor. In fact, he was . . . I believe he was awaiting a hearing in Indianapolis at the time of . . . at the time the trial took place. And it's clear . . . and why the government withdrew introducing this video deposition, I don't know, but they did. And by getting in evidence in the manner that they did, to me, clearly presented a confrontation issue and a Crawford violation that basically cemented their case against Ms. Zavallos. Was there any effort by the defense to bring this witness, to call him, to . . . None. To . . . no? None, Your Honor. None whatsoever. And the government's efforts to . . . to bring him were somewhat apathetic. I mean, they said they issued a subpoena a couple days before, knew where he was at, but really didn't go to any great lengths to try to bring the witness to trial or to testify in court. And I know that the government, in its brief, cited, well, a lawyer can waive the issue of confrontation, but I would submit that confrontation is now an issue that I think the defendant has to affirmatively waive. It's no longer an evidentiary hearsay issue. It used to be before Crawford, but now I think it's a confrontational issue. Certainly in a plea colloquy, every federal judge I know, when a defendant pleads guilty, makes specific inquiry of a defendant, do you waive the confrontation and cross-examination of witnesses? And the answer has to be affirmative. It has to be voluntary. So I don't think that counsel should be allowed to waive this issue any longer because Crawford heightened the confrontation issue to a constitutional dimension. But, I mean, you cannot agree with the government, instead of going to the defendant. And why . . . Well, I think a lawyer who does that, I think on the record, the court should make inquiry of the defendant, are you consenting to this waiver of allowing this testimony to come in, especially where the testimony, Judge Owen, establishes every element of the government's case. I mean, this testimony established that the alien was an alien, that Ms. Zobalos was doing this for and that she was a member of the conspiracy. So to stipulate to that type of testimony, I think clearly needs the assent on the record of the alien that I'm stipulating to this testimony coming in, rather than me being able to cross-examine and confront this witness. I think now, I think Crawford begs for that type of resolution and confirmation by not only the counsel, but his or her counsel. Do you acknowledge that we are bound by Stevens, that this panel is, unless this is taken in vain? Yes, Your Honor. I know that I'm aware of the Stevens opinion, Your Honor. I know Crawford came out after Stevens, long after Stevens. I know there's some other circuits, and I've got some cases where other circuits have now said that the trial court should take some affirmative action in assuring that the evidence is there. I don't want to sound nuts, but I think maybe perhaps the court . . . I would invite the court to re-examine Stevens in light of . . . That's a perfectly legitimate request. I just want to be sure that's . . . Sure. . . where we are. I am aware of what Stevens is holding, and I know that it's problematic, as far as Ms. Zobalos is concerned, but I just think that that case is predated Crawford, and certainly when Stevens came out, a lawyer . . . I don't want to interrupt your train of thought, but I think you've made a point, and I think you've adequately covered that point. If there were some other things you wanted to go over . . . Yes, I did, Your Honor. There was also the issue of this notebook that was introduced, and which was the other piece of evidence that the government used to help convict Ms. Zobalos. And by the way, Ms. Zobalos has already served her sentence, has been deported, but I . . . of course, we have . . . we know where to locate her, and certainly if this case were remanded for a new trial, she would have the right to be brought back to the United States for trial, so we do know where she's at. But getting to the notebook that was found on her person, our contention was that it was not properly authenticated, and should not have been admitted either as intrinsic evidence, because it wasn't 404B evidence, but then again, there was no proof that there was any . . . the notebook itself was the commission of a crime. In order for 404B evidence to come in, it has to show that the person committed a crime, and that's the reason for the admission of the 404B evidence, and that wasn't shown here. What we have . . . You're saying it was not evidence, it could not be used as evidence of the crime of conviction? Correct. It could not be, because it wasn't intrinsic to the offense. That's one argument the government made, and it wasn't properly authenticated at trial. Again, no objection to the authentication of the document, because we don't know who wrote . . . who made the entries in this particular notebook. Well, the level of substantiation on that is fairly low for the government, isn't it? I mean, we're talking about a notebook that was found in her purse in her car, right? That is correct, Your Honor. It was found in her purse in her car, but there's no evidence as to who made the writings in the particular notebook. Doesn't mean it was her notebook, but it was found in her purse, yes, but I don't feel . . . It was accompanied by some other receipts or something like that that had her  No, it did not. Weren't there other things in the purse that were personalized as to her? Well, there was a couple of cell phones that were found on her that one could argue that's evidence that it belonged to her, but that, I feel, is not the standard of authenticating this particular document. There needs to be something that identifies either someone saw her with that particular notebook, or there was some comparison of her known writing to establish that she made these particular nefarious or at least nebulous notations that were in this notebook, and so even though the standard is not particularly high in admitting it, the government didn't fulfill its burden in properly authenticating it, and therefore it should have been excluded again, even though counsel did not object to it, which I might add there was a motion in limine filed prior to trial, and the trial court said I'm basically taking this under advisement. He didn't say I'm letting this in or I'm excluding it, so therefore the standard is not plain error, but really is harmless error whether or not the court admitted this, because the trial court's ruling prior to trial was not of exclusion, it was just I'm taking this under advisement, and then ultimately admitted it at trial, but trial counsel, again, didn't renew his objection, which he probably should have in order to have preserved the error, but his failure to do so should not be judged under the plain error standard, but basically a harmless standard, because the prior ruling was not of exclusion, but was basically under advisement. I did not raise, simply because I know the court is routinely does not consider ineffective assistance of counsel arguments, but I think clearly here Ms. Zabalos received, there was a lot of error that was committed by trial counsel, and I know I raised the issue in my brief, and I think that certainly is an issue that I would ask the court to look at, but primarily the issue concerning the confrontation Crawford v. Washington, and again, I don't mean to misstep myself, but I think the United States v. Stevens needs to be revisited, especially under the heightened elevation that Crawford has given to confrontation issues. Thank you, Mr. Esper. You've saved time for rebuttal. Thank you very much. Ms. Lockwood. Your Honor, at the beginning, I would like to say on that ledger, I believe defense counsel did renew his objection to authentication. I think when the government tried to have that ledger admitted, defense counsel did say . . . he said something like, well, you haven't really shown who it belongs to, or who it was, or what it was really about. So on the ledger, I think he did make his objection to authentication. He did not, at the time the ledger was admitted, make an objection to authentication. I'm not that clear, because I think that's apparent in the record. So authentication is properly preserved? Yes, Your Honor. It's the government's position that they did properly authenticate it. This ledger was found in her purse, and in her purse, they did find an identification document. I think it was her illegal resident alien card was in her . . . Well, I have things in my purse that I didn't write. I'm sorry? I have things right this second in my purse that I didn't write. It's not my handwriting. Yes, Your Honor, and I think that's true of all of us. So how do you authenticate the handwriting and say that this ledger or this notebook is hers? It's her writing? It certainly would have been better practice had we had a handwriting expert look at that ledger. But on the other hand, she had two cell phones in her purse, and one of those contacts, I think it's Enrique, was in the cell phone, and she had a note about Enrique owes me $50 or owes me $25. That does not mean that the handwriting in the notebook was hers? No, Your Honor. It just connects the document up a little bit more. And the ledger also, authentication is to show that it appears to be what the government says it is, what the proponent says it is, and the document itself appears to be some kind of ledger. If you look at it, it's talking about amounts of money and numbers of people. So the document itself really looks like a ledger, and even if it isn't hers, why did she have it in her possession? Was it something that her husband had? Because she actually took the stand and admitted that she had written some of that down at the direction of her husband. Must there be a showing that it was her handwriting, that it was her that wrote it? Can we have a scenario where someone else might have wrote it, but it was in her possession and she was part of some conspiracy, not that we have that, but is it essential that it be proven that it was her writing that wrote those ledgers? No, Your Honor. I think really authentication really goes to is this what the government says it is? And what the government said it was, was a ledger that was found in her purse. The government didn't say it was hers, but they did say it was in her possession. And that's really the government said what the evidence showed. So it's enough to take it to the jury. I think the judge was right when he said, you know, your objections really are going to wait. And that's for the jury to decide, because now we know that this is a document. We know where it came from. We know it was in her purse. We know it was in her sole possession. And in a sense, you know, her purse and her vehicle were her office. Well, didn't the government draw a lot of inferences about what the words and what the document meant? Yes. Without any basis for that? Well, I think they argued certain inferences that there were people that she had picked up, but really the crux of the case was that she was there picking someone up at the time. And the ledger just shows really her intent and that she was in the business and that she was getting money for it. Do we have an issue with regard to whether those ledgers refer to other events, other crimes, other wrong acts, and does that create a problem if the ledger goes into other crimes or other bad acts? Your Honor, there's one date that predates the date of her arrest, and it's two days before, but she's charged with a conspiracy. So it's intrinsic to the conspiracy. I mean, a And so, since she was charged with a conspiracy, that ledger is really intrinsic evidence. It's not 404B evidence. And even if, you know, we charge the conspiracy started on June 12th, but an event occurred on June 10th, there's really the on or about language that I think encompasses two days before. So the only real date in that ledger is two days before. So it doesn't, you know, I think this is more of an intrinsic evidence than a bad act. And the agent was cross-examined about the ledger, and on cross-examination, he said it could be something that someone owed her money from a Tupperware party. And so really, the issue of what these numbers meant were an issue that went to the jury and both sides had the chance to argue what these numbers meant. Well, doesn't that underscore the harmfulness of it? If it could have been from a Tupperware party, why should the jury be allowed to speculate as to what it was? Well, I think the jury should be allowed to take inferences from the evidence. But if we don't, if the inferences, if it's just as equally, inferentially a Tupperware party as a drug deal, why is it harmful to let the jury consider that? I think because really, it was authenticated because it does look like we had testimony from the agent that said this looks like the ledgers that I've seen when I've done drug trafficking cases. I mean, alien trafficking cases. So the agent really testified that this is what it appears to be, in my opinion, based on my experience. Now, the jury could totally disagree with the agent, but I think the jury had a right to see that because it really had been authenticated. I do agree, Judge, it would have been better if we'd had a handwriting expert, but I don't believe that that's required by the law. I think it's a circumstantial approach to  Is it your position that it would have been enough to take it to the jury even without any kind of an indication that the defendant had written what was in the notes? It could have been someone else's description of the same transaction? Yes, Your Honor, because then it shows that she was the possessor of that record and that it was important to her business that there was a reason that she had possession of that. If someone tells me, here's our record book, and when you sell this ice cream, keep a record of it, and I have it in my possession, it shows that I'm in the business of selling ice cream, and the same thing would apply here. Do you recall from the record what closing argument defense counsel gave as to that particular notebook, notepad? No, I don't. We can look it up. I know the government did mention it, but I don't remember how he argued that. Well, it was referred to in closing argument and throughout the trial as the drug ledger or something to that effect, wasn't it? It was referred to as a ledger by the government. I don't know exactly what name was given to the ledger, but it was referred to as a ledger. I think if you look at that ledger, you will see that it's fairly apparent. Saturday, entree, $100, first guy. Second guy, $100, Saturday, entree. That really was a judgment. I think the jury was entitled to make. I would like to discuss the confrontation issue. Counsel argued that that statement by the alien that was stipulated to establish every element of the offense. Really, that's not true because the agents testified. They said, hey, we caught this guy. We looked him up. We found out he was an illegal alien. We got his telephone. We asked him if we could use his telephone. We approached this lady and pretended to be him. The agent's testimony independently established that they had found this alien and that that was the person that she intended to pick up. She never picked him up. She never transported him. She didn't cross him over. No, he was already crossed over and she was going to transport him into the United States. No, she did not. He asked her. He said something like, am I supposed to come? This is the agent pretending to be the alien. Did she ever have communication with him other than by cell phone, I think. Did she know him? Did he know her? No. They never met the alien and the accused. No, they had never met. She made a phone call to confirm that it was able, that she was supposed to pick up when the agent approached the vehicle. We don't have the traditional type of case where the alien says this is the person that transported me or this is the person that smuggled me across. No, Your Honor, because really the agent pretended the immigration agent pretended to be the alien. Really, the confrontation clause, if there was a confrontation clause, which we don't agree, we agree that it was way, I mean we believe that it was way, but to the extent there was, it was harmless. Excuse me. I apologize again. Is there anything else the court would like for me to address or any questions I could answer? All right. Thank you, Ms. Lockwood. Thank you. Ms. Jesper, you've saved time for rebuttal. Your Honor, I'll be very gracious and refund any time that's left over. Other than to say that the government would not have made this case, certainly on the financial gain portion that came as a confrontation violation. They derived the evidence. Ms. Lockwood had indicated that they still made the case even with the agent's testimony. The agent's testimony came from the declarations made by the alien and which was clearly hearsay information and was clearly a confrontation violation, but more importantly, that testimony from the alien could have if it was presented, established, the government could not have proved financial gain, which was an element of the conspiracy offense and the underlying smuggling case. They could not have proved that just by the agent's testimony. They had to have the alien's testimony. He wasn't present. Is the notebook, did it constitute some evidence of a foregain transaction? I don't think it did, Your Honor. I think the notebook, again, the authentication issue is significant and I think, Your Honor, it hit it very clearly. It could be a grocery list. It could be a list that somebody else made and wasn't hers. So there's no knowledge imputed to her that it was her ledger. And I'm not even sure it was really a ledger. That was the agent that testified he had seen one similar to that in the past. This is not like the drug ledgers where you clearly can identify that drug transactions have taken place. Here there's some innocuous notations. We don't know who made it, but that in and of itself, Your Honor, I don't feel substantiated or satisfied. Her guilt certainly beyond a reasonable doubt. Even assuming it was admitted properly, which I don't think it was. All right. Thank you, Mr. Esper. Your case is under submission. We noticed that you were court appointed. And we know that you've been here before in other cases. We appreciate your willingness to take the appointments and particularly appreciate your candor with the court and your strong advocacy.